740 N.E.2d 1241 (2000)
Willie WASHINGTON, Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 12A02-0004-CR-230.
Court of Appeals of Indiana.
December 19, 2000.
Transfer Denied March 9, 2001.
*1242 Jeffrey J. Jinks, McMains Foster Jinks & Morse, Indianapolis, Indiana, Attorney for Appellant.
Karen Freeman-Wilson, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

OPINION
MATTINGLY, Judge
Willie Washington was charged with and convicted of dealing in cocaine,[1] a Class A *1243 felony, and dealing in marijuana,[2] a Class C felony. He appeals the denial of his motion to suppress the evidence of drugs found in his car. Washington asserts the anonymous tip authorities received, in light of the absence of officer-observed reasonable suspicion, did not satisfy Indiana and United States constitutional requirements for a valid investigatory detention. Although Washington raises other issues, we find the issue of his stop dispositive, and so address it exclusively.
We reverse.[3]

FACTS AND PROCEDURAL HISTORY
Officer Curt Catron of the Clinton County Sheriff's Department was off-duty working a part-time security job in the early morning hours of February 3, 1998. An anonymous informant contacted the Lafayette State Police Post reporting a possible drunk driver. The informant advised that the driver, driving a black Cadillac with a white top, was southbound on Interstate 65. The informant also provided the license plate number of the Cadillac. Neither the identity nor the reliability of the informant was known or subsequently determined.
Officer Catron received the call and stationed himself at the roadside. When the Cadillac passed him, he began to follow it at mile marker 157. After following for approximately one-half mile, Officer Catron verified that the license number of the Cadillac was the same license number reported by the anonymous informant. Although Officer Catron did not observe evidence of drunken or erratic driving, he stopped the Cadillac at mile marker 155. Officer Catron testified that he stopped the Cadillac because he was concerned about the driver's medical condition. Washington, the driver of the Cadillac, told Officer Catron that his driver's license was suspended. Officer Catron advised Washington that he was under arrest. When Washington got out of the Cadillac, Officer Catron saw a brownish-green, leafy substance spread over the front seat. This substance was shown by a field test to be marijuana.
Washington refused permission to search the Cadillac, which was then towed to a nearby gas station where it was subjected to canine search. After the canine indicated the presence of narcotics, the Cadillac was transported to the Clinton County Sheriff's Department and stored until a search warrant was procured. Police found two duffel bags containing cocaine and sealed bricks of marijuana in the trunk of Washington's car.

STANDARD OF REVIEW
We review the denial of a motion to suppress evidence in a manner similar to allegations of insufficient evidence. Taylor v. State, 689 N.E.2d 699, 702 (Ind. 1997). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. Id. However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, in reviewing a denial of a motion to suppress, we must also consider the uncontested evidence most favorable to the defendant. Fair v. State, 627 N.E.2d 427, 434 (Ind. 1993).

DISCUSSION AND DECISION
Arguing under both the United States Constitution and the Indiana Constitution, Washington contends that the initial traffic stop by Officer Catron was improper because it was based solely on an anonymous tip, and as he committed no crime in the officer's presence, an investigatory stop was not warranted. We agree.
*1244 1. United States Constitutional Analysis
Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), sets forth the long-held federal standard of anonymous tip validity. The police stopped White's vehicle after they received an anonymous telephone tip. A search of the car revealed drugs. The issue presented in White was whether the tip exhibited sufficient reliability to provide reasonable suspicion for the investigatory stop. The Supreme Court determined that the anonymous tip did provide reasonable suspicion for a Terry[4] stop. Id. at 326-27, 110 S.Ct. 2412. The Court went on to explain that:
What was important was the caller's ability to predict [White's] future behavior, because it demonstrated inside informationa special familiarity with [White's] affairs. The general public would have had no way of knowing that [White] would shortly leave the building, get into the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.
Id. at 332, 110 S.Ct. 2412.
The assurance that the high court relied upon was that when "significant aspects of the caller's predictions were verified, there was reason to believe not only was the caller honest, but also that he was well-informed, at least well enough to justify the stop." Id. The anonymous tip, in combination with officer-observed activity that verified aspects of the caller's information, validated the information gained and substantiated the reasonable suspicion requirement for a legal Terry stop.
Similarly, the Seventh Circuit, in United States v. Price, 184 F.3d 637, 642 (7th Cir.1999) found that an anonymous tip that an amount of cocaine would be in a particular car, a description of the defendant and those traveling with him, where the trip originated, and where it would conclude, provided reasonable suspicion for a Terry stop.
The most recent United States Supreme Court opinion addressing anonymous tips is Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In J.L., an anonymous caller reported to Miami Dade Police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. The police responded and found three black males at the bus stop, one wearing a plaid shirt. Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct, as they did not see a firearm and J.L. made no threatening or otherwise unusual movements. The officers performed a Terry frisk on all three males, seizing a gun from J.L. The Court stated that:
[t]he reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If White was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.... The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. Cf. 4 W. LaFave, Search and Seizure § 9.4(h), p. 213 (3d ed. 1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as *1245 to the likelihood of criminal activity, which is central in anonymous-tip cases).
Id. at 1379.
2. Indiana Authority
A number of recent Indiana cases discuss anonymous tips and what creates "reasonable suspicion." Most recently, in Bogetti v. State, 723 N.E.2d 876 (Ind.Ct. App.2000), we addressed a stop of a motorist after a concerned citizen approached officers eating dinner at a McDonald's restaurant and reported a possibly intoxicated truck driver leaving the same location. When the officers stopped Bogetti, he was unable to produce the truck's registration and ultimately failed the field sobriety tests. We found that "anonymous or unidentified informants can supply information that gives police reasonable suspicion. A tip will be deemed reliable when an individual provides specific information to police officers such as a vehicle description." Id. at 879.
Bogetti relied on two cases: Adams v. State, 542 N.E.2d 1362 (Ind.Ct.App.1989) and Lampkins v. State, 682 N.E.2d 1268 (Ind.1997). In Lampkins, an anonymous phone call giving a specific location, a complaint of open-air drug dealing, a license plate number and description of the vehicle was verified through another confidential informant amidst other random complaints citing open-air drug dealing. This tip was supplemented by additional information from the defendant's girlfriend.
Adams involved an anonymous phone call that alleged a stolen vehicle was being driven at a specific location and identifying the car and the driver by name. Adams fled the attempted investigatory stop. The vehicle Adams was driving was hot-wired, and the trunk lock had been removed. The anonymous phone call was substantiated by officer-observed activity that confirmed the substance of the phone call and provided reasonable suspicion to "freeze" the situation and investigate.
The State offers two additional cases: State v. Springmier, 559 N.E.2d 319 (Ind. Ct.App.1990) and State v. Smith, 638 N.E.2d 1353 (Ind.Ct.App.1994). Springmier was charged with operating while intoxicated based upon an investigation initiated after an anonymous call from a car phone. The caller complained of possible drunk driving and described the vehicle and the location. A Marion County Sheriff's Deputy proceeded to the scene and immediately located the described vehicle, driven by Springmier. The trial court granted Springmier's motion to suppress. We reversed, stating "The information Deputy Maher received from the dispatcher provided Deputy Maher with the reasonable suspicion based upon specific and articulable facts that the Defendant may have been committing a crime." 559 N.E.2d at 321. The opinion contains no reference to what the specific and articulable facts were, nor was a basis for the reasonable suspicion identified.
In Smith, through 911 calls and truck drivers using citizens band radios, a series of concerned citizens complained of a driver operating in the median and erratically changing lanes. Once authorities were dispatched to investigate, a professional truck driver assisted in further identifying the driver and directing authorities to the offending vehicle in traffic. We stated that "[t]he reasonable suspicion justifying a limited investigative stop of an automobile does not give the police officer all the rights attendant to an arrest, but only gives the police officer the right to temporarily freeze the situation in order to make an investigative inquiry." 638 N.E.2d at 1355; see also Platt v. State, 589 N.E.2d 222, 227 (Ind.1992).
Of additional interest is Stalling v. State, 713 N.E.2d 922 (Ind.Ct.App.1999). In Stalling, we re-affirmed that a "totality of the circumstances" approach should be utilized in determining whether the police had reasonable suspicion to believe criminal activity was afoot. We explained that courts, in judging the reasonableness of investigatory stops, must strike a balance between the public interest and the individual's *1246 right to personal security free from arbitrary interference by law enforcement. Id. at 924. There we found that a defendant who turned away from a fully uniformed approaching officer and then stuck his hand in his waistband did not present specific nor articulable suspicion that justified a Terry stop. Id. at 922.
3. Our Analysis
The federal constitution applies to the states through the provisions of the fourteenth amendment, which prohibit a state from falling below certain minimal standards. Taylor v. State, 639 N.E.2d 1052 (Ind.Ct.App.1994). However, Indiana courts have the responsibility of independent constitutional analysis, Cooper v. State, 540 N.E.2d 1216, 1217 (Ind.1989), and the Indiana Constitution may offer protections more extensive than those provided by its federal counterpart. Taylor, 639 N.E.2d at 1053. We have interpreted the protections provided by Article I, § 11 of the Indiana Constitution regarding investigatory stops to be consistent with federal interpretation of protections provided by the Fourth Amendment to the United States Constitution. Id. at 1054, citing Terry v. Ohio and Alabama v. White.
The federal precedent requires ability to predict future behavior, White, 496 U.S. at 332, 110 S.Ct. 2412, validating the informant's knowledge as "reliable in its assertion of illegality," J.L., 120 S.Ct. at 1379, in contrast to information that might be relayed to police by a prankster or a police officer acting in bad faith. See Bogetti, 723 N.E.2d at 879 (noting Bogetti had made "no claim that he was acquainted with the individual who reported the incident and there is no evidence to suggest that the citizen concocted a false report, told some `tall tale' of Bogetti's suspected intoxication or otherwise acted in a manner which might have placed the citizen's motive or credibility at issue)."
We accordingly hold that an anonymous telephone tip, absent any independent indicia of reliability or any officer-observed confirmation of the caller's prediction of the defendant's future behavior, is not enough to permit police to detain a citizen and subject him or her to a Terry stop and the attendant interruption of liberty required to accomplish it.[5]
Based on the totality of the circumstances of Washington's stop, including the absence of any officer-observed activity which would provide an independent basis for a traffic stop or otherwise generate reasonable suspicion and the absence of detailed predictions of Washington's future behavior or other indicia of reliability that would reflect the knowledge of the anonymous caller, we must reverse.
Reversed.
ROBB and MATHIAS, JJ., concur.
NOTES
[1] Ind.Code § 35-48-4-1(2).
[2] Ind.Code § 35-48-4-10(a)(1).
[3] Oral argument was held at Delphi High School on October 3, 2000. We wish to thank the faculty and students for their hospitality.
[4] See Terry v. Ohio, 392 U.S. 1, 28, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that certain police stops of limited duration that are reasonably related in scope to the justification for their initiation are legal).
[5] We note that some of our recent decisions could be interpreted to reflect a divergence between the Indiana and federal case law with respect to the question whether an anonymous tip, without more, can provide police with reasonable suspicion that criminal activity might be afoot. See, e.g., Springmier, where we found the police had reasonable suspicion the defendant may have been committing a crime based on a call from a "concerned citizen" to the police dispatcher. 559 N.E.2d at 320. That decision does not reflect whether the officer observed any activity that would support a traffic stop, nor did it indicate whether the police had any evidence of the caller's reliability. The Springmier decision did indicate the suspicion was based on "specific and articulable facts," id. at 321, but did not indicate what those facts were or whether the caller offered the dispatcher any facts other than the description of the car and the direction of travel. To the extent Springmier may be interpreted to allow a Terry stop based on nothing more than an anonymous telephone call reporting a vehicle's location and direction of travel, we decline to follow it. We similarly decline to interpret Bogetti to stand for the proposition that a vehicle description, without more, can demonstrate reliability of an anonymous tip sufficient to support a Terry stop.