STATE of Indiana, Appellant–Plaintiff,

v.

Linda EICHHOLTZ, Appellee–
Defendant.

No. 49A02–0104–CR–224.

Court of Appeals of Indiana.

July 20, 2001.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

James H. Voyles, Voyles, Zahn, Paul, Hogan and Merriman, Indianapolis, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge.

The State of Indiana appeals the trial court's grant of defendant Linda Eichholtz's motion to suppress. The State raises one issue, which we restate as whether the trial court erred in granting Eichholtz's motion to suppress evidence obtained pursuant to a traffic stop of Eichholtz's car. We reverse.

The facts are not in dispute. At approximately 5:00 p.m. on Monday July 31, 2000, Lenny Thatch was driving his car southbound on Meridian Street in Indianapolis. A white Le Baron driven by Eichholtz pulled onto southbound Meridian Street, crossed the center line that divided northbound from southbound traffic, and proceeded back into a southbound lane. As Thatch followed Eichholtz, he noticed that her car repeatedly crossed the center line into the northbound lanes and repeatedly drove up onto the curb on the right side of the road. As Eichholtz turned onto 38th Street, Thatch followed and called 9–1–1 to report the erratic driving. Thatch reported to the dispatcher the description of the car, its license plate number, and its location, along with his name and a description of his own car. The dispatcher relayed this communication to Officer Christopher Mosier of the Indianapolis Police Department. Officer Mosier headed in the direction that Thatch had reported that he and Eichholtz were driving, and Officer Mosier encountered Thatch's car following a Le Baron, which bore the license plate number that Thatch had reported. Although he did not personally observe any erratic driving or traffic violations, Officer Mosier pulled Eichholtz's car over.

Eichholtz was charged with operating a vehicle while intoxicated, a class A misdemeanor;[1] operating a vehicle with a blood alcohol content greater than .15, a class A misdemeanor;[2] and public intoxication, a class B misdemeanor.[3] Eichholtz filed a motion to suppress the evidence obtained pursuant to the traffic stop. The trial court granted Eichholtz's motion to suppress.

The sole issue on appeal is whether the trial court erred in granting Eichholtz's motion to suppress the evidence obtained pursuant to a traffic stop of Eichholtz's car. The State has the burden to demonstrate that the measures it used to seize information or evidence were constitutional. *State v. Ashley,* 661 N.E.2d 1208, 1211 (Ind.Ct.App.1995). When the State appeals the trial court's grant of the defendant's motion to suppress evidence, the State is appealing from a negative judgment. *Id.* Consequently, the State has the burden of demonstrating to us that the evidence is without conflict and that the evidence and all reasonable inferences therefrom lead to the conclusion opposite that reached by the trial court. *Id.* During our review, we consider only the evidence most favorable to the judgment, and we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

Eichholtz asserts that the trial court correctly granted her motion to suppress

---

1. Ind.Code § 9–30–5–2.

2. Ind.Code § 9–30–5–1(b).

3. Ind.Code § 7.1–5–1–3.

because Officer Mosier did not have reasonable suspicion to stop Eichholtz.[4] The Fourth Amendment to the United States Constitution provides, in pertinent part: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. Pursuant to the Fourteenth Amendment of the United States Constitution, individual states must provide their citizens with the protections afforded by the Fourth Amendment. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *reh'g denied,* 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961).

■■■ In *Terry,* the United States Supreme Court created an exception to the Fourth Amendment's requirement that a police officer have probable cause or a warrant before stopping a person. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Pursuant to *Terry,* a police officer may detain a person briefly for investigation if the officer has reasonable suspicion, based on specific and articulable facts, "that criminal activity may be afoot." *Id.* at 30, 88 S.Ct. at 1868. Reasonable suspicion consists of "a minimal level of objective justification for making a stop" that is "more than an inchoate and unparticularized suspicion or hunch."

*State v. Belcher,* 725 N.E.2d 92, 94 (Ind.Ct. App.2000), *reh'g denied, trans. denied.* Whether the officer's suspicion was reasonable is determined on a case-by-case basis by engaging in a fact-sensitive analysis of the totality of the circumstances. *Id.*

■■■ Here, Eichholtz asserts that Officer Mosier did not have reasonable suspicion to conduct a *Terry* stop of her car. Eichholtz supports this assertion by citation to *Washington,* 740 N.E.2d 1241. In *Washington,* a citizen called the police to report a possible drunk driver. *Id.* at 1243. The informant, whose identity and reliability remained unknown, informed police that a black Cadillac with a white top and a specific license plate number was heading southbound on Interstate 65. *Id.* A police officer, who located the Cadillac and verified the license plate number, pulled the car over without personally observing any evidence of drunk or erratic driving. *Id.* Relying on a recent Supreme Court decision, *Florida v. J.L.,* we held that the officer did not have reasonable suspicion to stop the car because the anonymous tip was not corroborated by evidence of the informant's reliability or by independent observation of the officer. *Washington,* 740 N.E.2d at 1246 (citing *Florida v. J.L.,* 529 U.S. 266, 271–272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000)).[5]

---

**4.** Eichholtz does not state whether she believes that Officer Mosier's stop of her car was unconstitutional under state law, federal law, or both. This fact will have little impact on our analysis, as Indiana courts to this point have interpreted the protection against investigatory stops provided by Article 1, § 11 of the Indiana Constitution to be co-extensive with the protection provided against investigatory stops by the Fourth Amendment of the United States Constitution. *Washington v. State,* 740 N.E.2d 1241, 1246 (Ind.Ct.App. 2000), *trans. denied.* However, because Eichholtz does not provide a separate argument based on the Indiana Constitution, she has waived that ground for appellate review, and we analyze only whether Officer Mosier's stop

of Eichholtz's car violated the Fourth Amendment of the United States Constitution. *See, e.g., Bryant v. State,* 660 N.E.2d 290, 300 n. 21 (Ind.1995), *cert. denied,* 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996).

**5.** In *J.L.,* police received an anonymous telephone call reporting that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *J.L.,* 529 U.S. at 268, 120 S.Ct. at 1377. When police arrived at the bus stop six minutes later, they saw three black males, one of whom, J.L., was wearing a plaid shirt. *Id.* at 268, 120 S.Ct. at 1377. J.L. made no threatening or unusual movements, and the officers could

However, we do not agree with Eichholtz's assertion that *Washington* should control our decision because, unlike *Washington* and *J.L.* wherein the informant was completely anonymous, the informant in this case was not anonymous. Quite to the contrary, the tip came from Thatch, a motorist who willingly informed the 9–1–1 operator of his name and the description of his car. In addition, Thatch continued following Eichholtz, stayed on the line with the 9–1–1 operator, listened to the operator relay his communication to Officer Mosier, and remained behind Eichholtz until Officer Mosier arrived to pull Eichholtz over. Lieutenant Mosier testified that he believed Eichholtz's car was the car he should pull over because of the license plate on her car and because Mr. Thatch's car was following her car. When defense counsel asked Lieutenant Mosier whether he had "independently verified anything from Mr. Thatch," Lieutenant Mosier stated, "I did verify that there was, in fact, Mr. Thatch there in the described car, and that he was following this vehicle." Appellant's App. pp. 53, 54.

Given the factual differences between this case and *Washington* or *J.L.*, we find *Adams* more instructive. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In *Adams*, a police officer, who was sitting in his patrol car, was approached by an informant whom he knew, and the informant told the officer that the defendant, who was seated in a nearby car, had a gun in the waistband of his pants and was carrying drugs. *Id.* at 144–145, 92 S.Ct. at 1922. The officer approached the defendant's car and asked the defendant to open the door. *Id.* at 145, 92 S.Ct. at 1922–1923. When the defendant rolled down the window of the car instead of opening the car door, the officer reached through the open window and removed a gun from the defendant's waistband. *Id.* at 145, 92 S.Ct. at 1923. In habeas corpus proceedings, the defendant claimed that all of the evidence seized from him should have been suppressed because "absent a more reliable informant, or some corroboration of the tip, the policeman's actions were unreasonable under the standards set forth in *Terry*." *Id.* at 145, 92 S.Ct. at 1923.

In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry:*

> In *Terry* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

not see a firearm. *Id.* at 268, 120 S.Ct. at 1377. Nevertheless, on the basis of the anonymous tip alone, one of the officers searched J.L. and found a gun in his pocket. *Id.* at 268, 120 S.Ct. at 1377. The Supreme Court held that this search was an invalid *Terry* stop because the anonymous tip did not contain the indicia of reliability required to provide the officer with reasonable suspicion that J.L. was carrying a gun. *Id.* at 272–274, 120 S.Ct. at 1379–1380.

\* \* \*

Applying these principles to the present case, we believe that [the officer] acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had [the officer's] investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, the information carried enough indicia of reliability to justify the officer's forcible stop of Williams.

In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

*Id.* at 145–147, 92 S.Ct. at 1923–1924.

Here, Mr. Thatch called 9–1–1 to give information to the police regarding his car, the defendant's car, and their location, all of which Officer Mosier was able to confirm when he arrived at the scene. In addition, Mr. Thatch identified himself to the 9–1–1 operator in such a manner that he could be held legally responsible if Officer Mosier's investigation indicated that Mr. Thatch filed a false police report. *See* Ind.Code § 35–44–2–2.[6] While this information would not have been sufficient to arrest Eichholtz for driving while intoxicated, this information was sufficient to justify Officer Mosier's stop of Eichholtz to briefly investigate the situation further. *See, e.g., United States v. Sierra–Hernandez,* 581 F.2d 760, 762–764 (9th Cir.1978) (holding that reasonable suspicion existed to pull over the defendant's truck based on the circumstances surrounding an anonymous informant stopping his car to tell an officer via a face-to-face conversation that the defendant's truck had been involved in criminal activity), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *see also J.L.,* 529 U.S. at 274–276, 120 S.Ct. at 1380–1381 (Kennedy, J., concurring).

Consequently, we decline Eichholtz's invitation to hold that Officer Mosier was

---

**6.** Ind.Code § 35–44–2–2 provides, in pertinent part, that:

(c) A person who:

(1) gives a false report of the commission of a crime or gives false information in the official investigation of the commission of a crime, knowing the report or

information to be false ... commits false informing, a Class B misdemeanor. However the offense is a Class A misdemeanor if it substantially hinders any law enforcement process or if it results in harm to an innocent person.

required under these circumstances to wait for independent visual confirmation that Eichholtz was driving erratically. Forcing Officer Mosier to obtain personal visual confirmation of erratic driving could have resulted in injuries to Eichholtz or an innocent passerby. Given that Officer Mosier had reasonable suspicion to pull Eichholtz over based on his confirmation of the information that Mr. Thatch had given to the 9–1–1 operator, Officer Mosier did not need to wait for personal visual confirmation that Eichholtz was driving erratically. *See, e.g., Sierra–Hernandez,* 581 F.2d at 762–764.

For the foregoing reasons, the judgment of the trial court is reversed.

Reversed.

MATTINGLY–MAY, J., and BROOK, J., concur.