Henry Luke KELLEMS, Jr.,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 62A05–0401–CR–38.

Court of Appeals of Indiana.

Oct. 7, 2004.

Susan K. Carpenter, Public Defender of
Indiana, J. Michael Sauer, Deputy Public

Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Henry Luke Kellems, Jr. appeals his conviction for Operating a Vehicle as an Habitual Traffic Offender, as a Class D felony, and the trial court's order finding him in violation of his probation. Kellems raises a single dispositive issue, namely, whether a caller's tip established reasonable suspicion to effectuate a traffic stop under the Fourth Amendment to the United States Constitution.[1]

We reverse.

### FACTS AND PROCEDURAL HISTORY

On March 20, 2002, a woman who identified herself as "Dodie McDonald" called the Tell City Police Department to report that a man named Luke Kellems was driving from Troy to Tell City without a valid driver's license or insurance. The caller told police that Kellems was intoxicated and had children in the vehicle. She provided a description of Kellems' vehicle and a license plate number.

Sergeant Lynn Wooldridge, who had been on patrol in the area, responded to the dispatch and soon located a truck matching the description the caller had provided. As Sergeant Wooldridge approached the truck, he recognized the driver as Kellems. Before he stopped the vehicle, Wooldridge confirmed that the vehicle's license plate number matched the one the caller had provided.

Sergeant Wooldridge discovered Kellems sitting in the driver's seat, with his wife and child sitting in the passenger seats. Sergeant Wooldridge approached Kellems and requested his driver's license. Kellems produced identification, but not a driver's license. Sergeant Wooldridge ran a computer check with the Bureau of Motor Vehicles, and he administered a portable breath test. Although the breath test results came back negative, the computer check revealed that Kellems was a habitual traffic offender and that his driver's license had been suspended. Sergeant Wooldridge also discovered that Kellems did not have insurance on the vehicle or a valid license plate. Because Kellems was driving with a suspended license, Sergeant Wooldridge arrested him and transported him to the Perry County Jail.

The State charged Kellems with operating a vehicle as a habitual traffic offender, as a Class D felony. Because Kellems was on probation in another case[2] at the time he allegedly committed the current offense, the State filed a petition alleging he was in violation of his probation. Kellems filed a motion to suppress the evidence obtained as a result of the traffic stop.

---

1. Kellems also challenges his conviction on state constitutional grounds. But we do not reach that issue because we reverse on federal constitutional grounds.

2. The transcript reveals that Kellems pleaded guilty to Operating a Vehicle as an Habitual Traffic Offender, as a Class D felony, and Resisting Law Enforcement, as a Class D felo-

ny, on September 5, 2000. The trial court sentenced Kellems to a total of four years imprisonment, with three and one-half years suspended. The trial court placed Kellems on probation with the condition that he not be arrested and charged with a crime while on probation.

Following a hearing, the trial court denied Kellems' motion.

The trial court scheduled a bench trial for October 23, 2003. Shortly before trial, Kellems' attorney withdrew. The court appointed a new attorney for Kellems, and that attorney filed another motion to suppress. On October 23, the trial court heard evidence on that motion, the charged offense, and the alleged probation violation. The trial court denied Kellems' motion to suppress and found him guilty as charged and in violation of his probation. The trial court sentenced him to three years in the Indiana Department of Correction on the underlying offense and suspended his driving privileges for life. The trial court also revoked his probation on the prior offense and ordered him to serve two years, which had previously been suspended. Kellems filed a motion to correct error, which the court also denied. This appeal ensued.

## DISCUSSION AND DECISION

▉ Kellems contends that the trial court erred when it denied his motion to suppress. When reviewing the denial of a motion to suppress, we determine whether there was substantial evidence of probative value to support the trial court's decision. *Caudle v. State,* 749 N.E.2d 616, 618 (Ind. Ct.App.2001), *clarified on reh'g on other grounds,* 754 N.E.2d 33 (Ind.Ct.App.2001), *trans. denied.* We consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Id.*

Initially, we note that Sergeant Wooldridge conceded that (1) he did not observe Kellems commit a traffic violation before he stopped the vehicle, and (2) he made the stop based solely on the call received by dispatch. Kellems claims, however, that the call to dispatch did not provide reasonable suspicion to stop his vehicle. According to Kellems, there was no showing that the caller was reliable or that her identity was verified prior to the stop. Kellems also contends that anyone could have obtained the information that was corroborated by the police prior to the stop. We agree with Kellems.

▉ Though the Fourth Amendment protects citizens against unreasonable search and seizure, police officers may briefly detain an individual if they have reasonable suspicion that criminal activity has occurred or is about to occur. *State v. Glass,* 769 N.E.2d 639, 641–42 (Ind.Ct.App. 2002), *trans. denied.* Reasonable suspicion exists "where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur." *Id.* at 642. On appeal, we determine if there was reasonable suspicion for a stop by looking to the totality of the circumstances. *Id.* We review the trial court's ruling de novo. *Id.*

The United States Supreme Court has issued several opinions regarding when a tip provides reasonable suspicion for a traffic stop. In *Adams v. Williams,* 407 U.S. 143, 144–45, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), an informant, who had provided reliable information in the past, approached a police officer and told him that a man sitting in a nearby vehicle was carrying narcotics and a gun. The police officer approached the car identified by the informant and asked the occupant to open the door. *Id.* at 145, 92 S.Ct. 1921. When the occupant rolled down the window instead of opening the door, the police officer reached inside and retrieved a gun from the occupant's waistband. *Id.* The Court determined that the tip provided sufficient "indicia of reliability" to briefly detain the occupant. *Id.* at 147, 92 S.Ct.

1921. The Court found compelling that the "informant was known to [the police officer] personally and had provided him with information in the past." *Id.* at 146, 92 S.Ct. 1921. The Court also found compelling that the informant came forward in person and "might have been subject to immediate arrest for making a false complaint had [the police officer's] investigation proved the tip incorrect." *Id.* at 147, 92 S.Ct. 1921.

The Court was faced with a similar issue in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, unlike in *Adams*, the tipster in *Alabama* was anonymous. The caller told police that a certain woman would be leaving her apartment at a particular time and driving her car to a particular motel. *Id.* at 327, 110 S.Ct. 2412. The caller provided a description of the vehicle and indicated that the woman would be in possession of cocaine. *Id.* The police went to the address provided by the caller and saw a woman leave the particular apartment building and enter a car matching the caller's description. *Id.* The police followed the vehicle and stopped it just before it reached the destination identified by the caller. *Id.*

The Court acknowledged that because the tip was anonymous, it was unable to determine whether the caller was honest or reliable. *Id.* at 329, 110 S.Ct. 2412. The Court also noted that the caller did not provide a basis of knowledge. *Id.* However, the Court ultimately concluded that the tip contained sufficient indicia of reliability because the tip was corroborated by police investigation. *Id.* at 331, 110 S.Ct. 2412. In reaching its decision, the Court emphasized that the determination of reasonable suspicion, like probable cause, is made by considering the totality of the circumstances. *Id.* at 330, 110 S.Ct. 2412. The Court also noted that both the quantity and quality of information should be considered. *Id.* The Court explained that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.* The Court also distinguished between information " 'easily obtained' " and information " 'not easily predicted.' " *Id.* at 332, 110 S.Ct. 2412 (quoting *Illinois v. Gates*, 462 U.S. 213, 245, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

> We think it also important that . . . "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." The fact that the officers found a car precisely matching the caller's description in front of the [apartment building described] is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information—a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to [the motel]. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was hon-

est but also that he was well informed, at least well enough to justify the stop. *Id.* (citations omitted).

In *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the Supreme Court again considered whether an anonymous tip carried sufficient indicia of reliability. There, the police received an anonymous tip that a young black male wearing a plaid shirt was standing at a bus stop and carrying a handgun. *Id.* at 268. Two police officers went to the bus stop and saw three black males, one of whom was wearing a plaid shirt. *Id.* The officers stopped and frisked the man wearing the plaid shirt and found a gun in his pocket. *Id.* The Court concluded that the tip did not have sufficient indicia of reliability. *Id.* at 271, 120 S.Ct. 1375. In particular, the Court concluded that while the officers corroborated the caller's information, "[t]he anonymous call concerning [the defendant] provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *Id.* The Court also noted that, as a general rule, a tip should be reliable "in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272, 120 S.Ct. 1375.[3]

■■■ These cases provide that whether a tip has sufficient indicia of reliability is determined by examining the totality of the circumstances. Thus, a court must look first to the reliability of the informant. If there is no evidence that the informant is honest and reliable and no evidence of the caller's basis for knowledge, as in the case of an anonymous tip, a court must look to other information which may tend to corroborate the tip. However, in determining whether a tip has been sufficiently corroborated, a court must distinguish between information which is easily obtained and that which is known only to a few; only in the latter case will the corroboration show that an anonymous informant is reliable. Finally, while the holding in *White* seems to be the exception, the information which is corroborated should tend to show criminal activity has occurred or is about to occur.

Here, the person who called dispatch identified herself as "Dodie McDonald" and gave her date of birth. Based on that information, the caller, in theory, could have been held legally responsible if she had made a false police report. *See State v. Eichholtz*, 752 N.E.2d 163, 167 (Ind.Ct. App.2001) (noting caller provided information specific enough to subject him to criminal charges for false reporting in determining whether reasonable suspicion for stop existed). Sergeant Wooldridge testified at the suppression hearing that while he did not know the caller personally, he "kn[e]w of her on different calls," and knew she lived with a man named Richard Board. Transcript at 94. However, the officer's testimony in no way establishes that the caller was honest or had provided reliable information in the past. There is also no evidence revealing the basis for the caller's knowledge. And most significantly, there is no evidence that the officer or dispatch ever verified the caller's identity

---

**3.** The Court in *J.L.* made clear that the holding in *White* was "borderline." *Id.* at 271, 120 S.Ct. 1375. The Court in *J.L.* explained that while "[k]nowledge about a person's future movements indicates some familiarity with that person's affairs, ... [it] does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband." *Id.* In addition, the Court issued a unanimous opinion in *J.L.*, while the vote in *White* was 6–3. For example, Justices O'Connor, Scalia and Kennedy all voted with the majority position in *White*. But Justices O'Connor and Scalia joined the majority opinion in *J.L.*, and Justice Kennedy wrote a concurring opinion. Accordingly, the unanimous opinion in *J.L.* reflects a retreat from the holding in *White*.

prior to the stop. Therefore, when the officers stopped Kellems' vehicle, they did not know whether the caller was actually McDonald, a prankster, or an imposter. *See Glass,* 769 N.E.2d at 643 (concluding tip from named caller with unknown reputation and whose identity was not verified does not establish reasonable suspicion to stop vehicle).

Still, the State asserts that this case is like *State v. Eichholtz,* 752 N.E.2d 163 (Ind.Ct.App.2001). We disagree. In *Eichholtz,* a man named Lenny Thatch was driving his vehicle when he saw another vehicle cross the center line of a divided highway. *Id.* at 164. Thatch followed the vehicle and repeatedly saw it cross the center line and drive onto the curb. *Id.* Thatch called 911 and provided a description of the car, its license plate number, and its location. *Id.* Thatch also provided his name and a description of his car. *Id.* Thatch continued to follow the vehicle until a police officer arrived to investigate. *Id.* On appeal, we found important not only that Thatch had provided his name, but that he had stayed with the vehicle and on the telephone with dispatch until the police officer arrived. *Id.* at 166. Because Thatch continued to follow the defendant's vehicle until police arrived, the police officer was able to verify Thatch's identity and the basis for his knowledge.

Again, unlike in *Eichholtz,* the police in this case did not verify that the person who had called was actually McDonald. And the caller provided no information regarding the basis for her knowledge. For reliability purposes, the caller in this case was no more than a stranger. Thus, *Eichholtz* is easily distinguishable, and the State's reliance on that case is misplaced.

Having concluded that the tip had a relatively low degree of reliability, we must determine whether other information, namely, police corroboration, estab-

lished the requisite level of suspicion. The caller provided a description of Kellems' car and a license plate number. She identified the driver as Luke Kellems and stated that he was driving from Troy to Tell City without a valid driver's license or insurance. The caller also told the dispatcher that Kellems was intoxicated and had children inside the vehicle. Before Sergeant Wooldridge stopped Kellems' vehicle, he verified the vehicle's description and license plate number. He also confirmed that Kellems was driving the vehicle and was headed toward Tell City from Troy.

However, of the information which was corroborated, none of it predicted Kellems' future behavior; rather, it consisted of easily obtained facts and conditions existing at the time of the tip. *See Alabama,* 496 U.S. at 332, 110 S.Ct. 2412. Anyone who knew Kellems could have provided a description of his vehicle and his license plate number and "predicted" that Kellems would be driving it. *See Washington v. State,* 740 N.E.2d 1241, 1246 (Ind.Ct.App. 2000) (holding police officer's corroboration of vehicle description and license plate number provided by anonymous caller did not establish sufficient indicia of reliability of tip to justify stop of defendant's vehicle), *trans. denied.* While the information concerning Kellems' route from Troy to Tell City might have been considered "predictive information," there is nothing in the transcript to support that interpretation. *J.L.,* 529 U.S. at 271, 120 S.Ct. 1375. As noted above, the caller did not explain why she knew what she revealed to the dispatcher. Therefore, while it is possible that the caller knew Kellems would be driving from Troy to Tell City because she was privy to his itinerary, it is just as possible that she had observed Kellems and his family en route and made the call at that time. Indeed, the fact that Kel-

lems was traveling away from Troy towards Tell City, as well as a description of his car and license plate number, was all information available to the general public and does not demonstrate that the caller had a special familiarity with Kellems' affairs. *See Alabama*, 496 U.S. at 332, 110 S.Ct. 2412.

Finally, none of the information Sergeant Wooldridge corroborated showed that Kellems had engaged in or was about to engage in criminal activity. Woolridge did not observe Kellams commit a traffic offense or engage in any other illegal activity. In other words, there is no evidence that the caller's tip was reliable "in its assertion of illegality[.]" *J.L.*, 529 U.S. at 272, 120 S.Ct. 1375. Given these circumstances, we conclude that the tip did not contain the requisite indicia of reliability. As a result, Kellems' motion to suppress should have been granted and all evidence discovered following the stop, including evidence of his status as a habitual traffic violator, should have been suppressed at his criminal trial.[4] As such, the evidence

is insufficient to support his conviction, and we reverse the trial court's judgment. Further, because the State did not plead or prove any other probation violation, we reverse the trial court's order revoking Kellems' probation.

Reversed.

SULLIVAN, J., and BARNES, J., concur.

---

4. We have reviewed the other cases cited by the State in support of its position that McDonald's tip provided reasonable suspicion for the stop. However, we find those cases either distinguishable or not subject to the interpretation the State proffers in light of the United State Supreme Court's recent decision in *J.L.* Indeed, many of the cases cited by the State were decided before the Supreme Court decided *J.L.* And regarding two of the cases the State cites, *State v. Springmier*, 559 N.E.2d 319 (Ind.Ct.App.1990) and *Bogetti v. State*, 723 N.E.2d 876 (Ind.Ct.App.2000), we explained in *Washington*, 740 N.E.2d at 1246 n. 5, that:

[S]ome of our recent decisions could be interpreted to reflect a divergence between the Indiana and federal case law with respect to the question whether an anonymous tip, without more, can provide police with reasonable suspicion that criminal activity might be afoot. *See, e.g., Springmier*, where we found the police had reasonable suspicion the defendant may have been

committing a crime based on a call from a "concerned citizen" to the police dispatcher. 559 N.E.2d at 320. That decision does not reflect whether the officer observed any activity that would support a traffic stop, nor did it indicate whether the police had any evidence of the caller's reliability. The *Springmier* decision did indicate the suspicion was based on "specific and articulable facts," *id.* at 321, but did not indicate what those facts were or whether the caller offered the dispatcher any facts other than the description of the car and the direction of travel. To the extent *Springmier* may be interpreted to allow a *Terry* stop based on nothing more than an anonymous telephone call reporting a vehicle's location and direction of travel, we decline to follow it. We similarly decline to interpret *Bogetti* to stand for the proposition that a vehicle description, without more, can demonstrate reliability of an anonymous tip sufficient to support a *Terry* stop.