## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 13 2019, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan D. Rayl
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony J. Overton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 13, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-2090 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Barbara Crawford, Judge <br><br> Trial Court Cause No. <br> 49G09-1711-F6-44654 |

**Altice, Judge.**

**Case Summary**

[1] Anthony Overton appeals his conviction for Level 6 felony theft. His sole contention is that the stolen property found on his person during a search incident to arrest should not have been admitted into evidence because its discovery resulted from an unconstitutional seizure.

[2] We affirm.

## Facts & Procedural History

[3] Around 1:00 a.m. on November 18, 2017, a concerned citizen made a 911 call from outside an apartment complex at the corner of 11th Street and College Avenue in Indianapolis. The caller, who provided his name and phone number, reported that there was a black man wearing a dark jacket with a hood being "super suspicious." *State's Exhibit 1B* (recording of 911 call). He said that the man had been walking up and down "patrolling this area" and using a light to look into parked cars near a bar and strip mall. *Id.* The caller opined, "I think he's going to try and break into cars." *Id.* While still observing the man during the call, the caller reported that the man walked down 11th Street and then just turned into an alley.

[4] IMPD Officers Linford Parker and Kevin Moore were dispatched in response to the call, and Officer Brian Hofmeister backed up on the run because he was in the area. Officer Hofmeister drove southbound down the alley off of 11th Street that connects with 10th Street and runs parallel with College Avenue and Broadway Street. He turned eastbound on 10th Street and then northbound on College Avenue when a red truck caught his attention. The truck was parked in

a parking lot on the edge of the alley through which Officer Hofmeister had just driven. The interior light of the truck was on, and it had not been on moments before. Officer Hofmeister then observed the legs of a person "bent over inside" the truck. *Transcript* at 108. He had not seen anyone walking in that block while patrolling the area.

[5] As a result of his observations, Officer Hofmeister stopped and radioed Officers Parker and Moore. He said, "I think I got somebody over here in the alley, around 10th and 11th and College … watch the truck, you can kind of see somebody wrestling around inside of it." *Id*. at 101. Officer Parker responded that he was "right there", so Officer Hofmeister began to drive around to the mouth of the alley for backup. *Id*. at 106. After Officer Hofmeister turned off of College to 11th, he heard Officer Parker radio that he had "the person." *Id*. at 102. Officer Parker "saw [Overton] in the alley coming from the truck" and stopped him about thirty to forty feet from the truck. *Id*. at 119.

[6] Officer Hofmeister then turned onto Broadway and could see that Officer Parker had Overton in custody.[1] Officer Hofmeister pulled around to assist and, after running a license plate check on the truck, determined that the truck had been recently reported stolen. Additionally, Overton matched the

---

[1] Contrary to Overton's assertion on appeal, Officer Hofmeister did not testify that Overton was in handcuffs at this point in time.

description provided by the 911 caller, and the truck had a busted-out rear window.

[7] Shortly thereafter, Officer Moore arrived on the scene to assist. Overton was in handcuffs at this point, and Officer Parker informed Officer Moore that Overton was being placed under arrest for theft of the truck. Officer Moore then searched Overton's person and recovered, among other items, a distinctive pocket knife and a car key from Overton's front pocket.[2] Both of these belonged to the owner of the stolen truck, Billy Albright, whom Officer Hofmeister brought to the scene. Albright indicated that the items were inside his truck when it was stolen from outside his residence.

[8] The State charged Overton with Class A misdemeanor theft and Class B misdemeanor unauthorized entry of a motor vehicle. Additionally, the State alleged that Overton had a prior conviction for conversion, which elevated his theft charge to a Level 6 felony.

[9] Overton's one-day jury trial was held on June 13, 2018. Officer Parker did not testify due to illness, but Officers Hofmeister and Moore testified for the State. During the trial, Overton sought to suppress the items found on his person, claiming that their discovery resulted from an illegal seizure. The trial court denied the motion to suppress and admitted the evidence. The jury ultimately found Overton guilty of theft as a Level 6 felony and not guilty of unauthorized

---

[2] Overton also had a screwdriver in his back pocket.

entry of a motor vehicle. On August 2, 2018, the trial court sentenced Overton to 545 days in community corrections. Overton now appeals, challenging the admission of the knife and key found on his person following an allegedly unconstitutional seizure.

## Discussion & Decision

### Standard of Review

The trial court has broad discretion when ruling on the admissibility of evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). On appeal, we review such rulings for abuse of discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* "But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo." *Id.* at 40-41.

Overton argues the seizure violated both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Although these provisions contain textually similar language, it is well established that they must be separately analyzed. *Graham v. State*, 971 N.E.2d 713, 716 (Ind. Ct. App. 2012), *trans. denied*. Thus, we will address each in turn.

### Fourth Amendment

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

One exception to the warrant requirement for a seizure is an investigatory stop based on reasonable suspicion. *Campos v. State*, 885 N.E.2d 590, 597 (Ind. 2008); *Terry v. Ohio,* 392 U.S. 1, 30-31 (1968). "Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Campos*, 885 N.E.2d at 597 (quoting *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind. 1999)). Further, an investigatory stop may be based upon the collective information known to the law enforcement organization as a whole rather than just on the personal knowledge of the arresting officer. *See Dunson v. State*, 64 N.E.3d 250, 254 (Ind. Ct. App. 2016); *see also Griffith v. State*, 788 N.E.2d 835, 840 (Ind. 2003).

"Whether the officer's suspicion was reasonable is determined on a case-by-case basis by engaging in a fact-sensitive analysis of the totality of the circumstances." *State v. Eichholtz*, 752 N.E.2d 163, 165 (Ind. Ct. App. 2001); *see also U.S. v. Arvizu*, 534 U.S. 266, 274 (2002) (explaining that circumstances should not be considered in isolation from each other and that although each might be susceptible to an innocent explanation, when taken together the circumstances may warrant further investigation by officers). "Reasonable

suspicion entails some minimum level of objective justification for making a stop; something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *State v. Straub*, 749 N.E.2d 593, 598 (Ind. Ct. App. 2001).

[14] Here, Officer Parker had reasonable suspicion to detain Overton in the alley, after seeing him walk away from the truck, based on the other information he had learned from dispatch and Officer Hofmeister. Specifically, around 1:00 a.m., the officers were dispatched to the one-block area on the report of a black man wearing a dark jacket with a hood walking around and suspiciously peering into parked vehicles with a light. Officer Hofmeister patrolled the area and observed an interior light on in a truck parked in the middle of the block, just off an alley. This light had not been on moments before when he drove down the alley, and Officer Hofmeister could see that someone was bent over inside the truck with their feet still outside on the ground. Officer Hofmeister did not see any other individuals walking in the area. He radioed Officer Parker regarding the person in the truck. Officer Parker was nearby and stopped Overton in the dark alley, walking away from the truck, seconds later.[3]

---

[3] The record does not establish a precise timeline, but it can be reasonably inferred from Officer Hofmeister's testimony and the map admitted into evidence that the time period between Officer Hofmeister's observations and Officer Parker stopping Overton in the alley was a matter of seconds. Another reasonable inference from the evidence is that the person Officer Hofmeister saw in the truck was Overton, whom Officer Parker stopped after seeing Overton nearby in the alley coming from the same truck.

Overton fit the description given by the caller, a concerned citizen, and had just exhibited suspicious behavior similar to that reported by the caller.

[15] Under the totality of the circumstances, Officer Parker had particular and objective bases for suspecting that Overton was engaged in criminal activity. That is, the information known to the officers supported a reasonable suspicion that Overton was looking into vehicles for items to steal in the early morning hours when it was unlikely he would be detected. Officer Parker, thus, acted reasonably when he made an investigatory stop of Overton in the dark alley to assess the situation further with backup from Officer Hofmeister. Indeed, it would have been poor police work for Officer Parker not to have stopped Overton to investigate his behavior further.

[16] Within a short time after Officer Parker stopped Overton, Officer Hofmeister finished driving around the block and assisted with the investigatory stop. Officer Hofmeister promptly checked the license plate on the truck and determined that it had been reported stolen two days prior. Additionally, the truck had a broken back window providing access to the cab of the truck. At this point, the officers' reasonable suspicion escalated to probable cause, and Overton was placed under arrest for auto theft[4] and then searched incident to arrest by Officer Moore, who had just arrived on the scene. *See Sebastian v.*

---

[4] It is unclear when Overton was placed in handcuffs, but the record does establish that he was handcuffed by the time Officer Moore arrived, which was after Officers Hofmeister and Park had discovered that the truck was stolen and had decided to place Overton under arrest.

*State*, 726 N.E.2d 827, 830 (Ind. Ct. App. 2000) ("Probable cause to arrest exists where the officer has knowledge of facts and circumstances that would warrant a man of reasonable caution to believe that a suspect has committed the criminal act", and "[u]nder the search-incident-to-arrest exception to the warrant requirement, a police officer may conduct a search of the defendant's person…."), *trans. denied*. The stolen items found on Overton's person during this search were admissible at trial, as their discovery did not result from a violation of the Fourth Amendment.

## Article 1, Section 11

[17] Overton also asserts a violation of Article 1, Section 11 of the Indiana Constitution, which "safeguards the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure.'" *Watkins v. State*, 85 N.E.3d 597, 600 (Ind. 2017). An analysis under Article 1, Section 11 "turns on whether the police conduct was reasonable under the totality of the circumstances." *Carpenter v. State*, 18 N.E.3d 998, 1002 (Ind. 2014). In making this evaluation, we apply the test established by our Supreme Court in *Litchfield v. State*, 824 N.E.2d 356 (Ind. 2005). "The 'reasonableness of a search or seizure [turns] on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *J.G. v. State*, 93 N.E.3d 1112, 1122-23 (Ind. Ct. App. 2018) (quoting *Litchfield*, 824 N.E.2d at 361) (alteration in *J.G.*), *trans. denied*.

[18]     In some cases Article 1, Section 11 "confers greater protections to individual rights than the Fourth Amendment", but Indiana has adopted the *Terry* rationale in determining the legality of investigatory stops under Article 1, Section 11. *W.H. v. State*, 928 N.E.2d 288, 296 (Ind. Ct. App. 2010), *trans. denied*; *see also State v. Cunningham*, 26 N.E.3d 21, 25 (Ind. 2015) (observing that many search and seizure issues are resolved in the same manner under both constitutions, including an investigatory stop based on reasonable suspicion); *Holbert v. State*, 996 N.E.2d 396, 400 (Ind. Ct. App. 2013), *trans. denied*.

[19]     As discussed previously, Officer Parker had reasonable suspicion to make a brief investigatory stop of Overton to address behaviors observed by the 911 caller, Officer Hofmeister, and himself in the alley in the middle of the night. The degree of suspicion based on the totality of the circumstances was significant rather than "quite low" as suggested by Overton. *See Appellant's Brief* at 29. The officers then needed to dispel their reasonable suspicions that Overton was looking to take (or actually taking) items from unoccupied vehicles in the area. Finally, the degree of intrusion was not high under the circumstances. Officer Parker stopped Overton walking in the alley for a brief investigation, and Officer Hofmeister arrived as backup within a very short time. The investigatory stop then quickly led to the discovery that the truck was stolen, and the stop evolved into an arrest based on probable cause. We conclude the officers acted reasonably under the circumstances and, thus, find no violation of Article 1, Section 11.

[20]     Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.