STATE of Indiana, Appellant–Plaintiff,

v.

Jeremy R. STICKLE, Appellee–Defendant.

No. 24A01–0212–CR–490.

Court of Appeals of Indiana.

July 22, 2003.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Clay M. Kellerman, Kellerman Law Office, Batesville, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

The State charged Jeremy Stickle ("Stickle") with theft, as a Class D felony,[1] possession of marijuana, as a Class D felony,[2] and possession of marijuana, as a

---

1. Ind.Code § 35–43–4–2(a).

2. Ind.Code § 35–48–4–11.

Class A misdemeanor.[3] Stickle moved to suppress the evidence supporting the charges on the ground the evidence was obtained pursuant to an investigatory stop conducted without reasonable suspicion. The trial court granted Stickle's motion.

The State argues on appeal that Stickle was not seized and that even if he was, an anonymous tip the police received was sufficient to support the investigatory stop of Stickle. We conclude Stickle was seized and the anonymous tip did not give the police reasonable suspicion that Stickle was engaged in criminal activity. We accordingly affirm.

### Facts and Procedural History

The Indiana State Police received an anonymous tip that on December 28, 2001, between 5:00 p.m. and 6:00 p.m., an illegal drug transaction would occur at the Batesville McDonald's Restaurant. The informant indicated the transaction would involve Stickle and Rebecca Carter and that Stickle and Carter would be driving either a maroon Ford Ranger or a copper Jeep. The informant indicated Stickle had short hair and a goatee and would be wearing bib overalls.

At 4:45 p.m., Troopers Robert Blanton and David Noah went to the McDonald's, ordered food, and waited to see if the anonymous tip proved accurate. At 5:00 p.m., the troopers noticed a maroon Ford Ranger circling the parking lot. The Ranger was driven by a woman, and a man with short hair and a goatee was a passenger. The Ranger proceeded to the Pamida discount store, which was located next to the McDonald's. The Ranger's two occupants, later identified as Stickle and Carter, went into Pamida. At approximately 5:30 p.m., Trooper Blanton observed the Ranger leave Pamida and return to the McDonald's parking lot.

After exiting their vehicle and entering the McDonald's, Stickle and Carter ordered food. Trooper Noah then approached the two and stated, "Ma'am, sir, we need you to come with us." (Tr. at 16.) After walking outside with Troopers Blanton and Noah, Stickle and Carter observed two police cars blocking their vehicle in a manner that made it impossible for them to drive their vehicle away.

Trooper Blanton asked Stickle his name and if he knew why the troopers wanted to talk to him. Stickle stated his name and admitted to stealing a cassette tape from Pamida. During the subsequent interrogation, Stickle informed the troopers that he had a small amount of marijuana in his vehicle. The troopers found marijuana on Stickle's person and in his vehicle.

Prior to trial, Stickle moved to suppress the evidence obtained pursuant to his investigatory stop. After an evidentiary hearing, the trial court granted the motion.

### Standard of Review

The State challenges the order granting Stickle's motion to suppress. At the suppression hearing, the State had the burden of demonstrating the constitutionality of the measures it used to secure evidence. *State v. Glass*, 769 N.E.2d 639, 641 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 695 (Ind.2002). In order to prevail on appeal, the State must show the trial court's ruling on the suppression motion is contrary to law. *Id.* We accept the factual findings of the trial court unless they are clearly erroneous. *Id.* In reviewing the trial court's decision, we consider the evidence most favorable to the ruling together with any adverse evidence that is uncontradicted. *Id.*

---

**3.** *Id.*

## Discussion and Decision

### 1. The Seizure

▇▇▇ The State argues initially that Stickle was not "seized" and his Fourth Amendment rights were therefore not implicated. To determine whether an encounter with police amounts to a seizure, we consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. *Bentley v. State*, 779 N.E.2d 70, 73–74 (Ind.Ct.App.2002). What constitutes a restraint on liberty prompting a person to conclude he is not free to leave varies according to the police conduct at issue and the setting in which the conduct occurs. *Id.* at 74. Police actions that a reasonable person might interpret as an intrusion on freedom of movement include "operation of a police vehicle in an aggressive manner to either block the person's course or otherwise control the direction or speed of the person," the threatening presence of several officers, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.*

The evidence most favorable to the judgment is that the police approached Stickle and Carter and stated, "Ma'am, sir, we need you to come with us." (Tr. at 16.) After walking outside with the police, Stickle and Carter noted their vehicle was "completely blocked in" (Tr. at 17) by two police cars such that it would not have been possible for Stickle and Carter to leave in the vehicle.[4] We cannot characterize as "clearly erroneous" or "contrary to law" the trial court's determination a reasonable person in Stickle's position would have concluded he was not free to leave and had therefore been "seized."

### 2. Reasonable Suspicion

▇▇▇ An investigatory stop of a citizen by an officer violates constitutional protections where the officer does not have a reasonably articulated suspicion of criminal activity. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind.1997), *modified on reh'g on other grounds* 685 N.E.2d 698 (Ind.1997). Probable cause is not necessary; rather, the officer must have a reasonable suspicion of criminal activity to make an investigatory stop. *Id.* The reasonableness of the officer's suspicion must be measured by the officer's knowledge before the officer conducted the investigatory stop. *Francis v. State*, 764 N.E.2d 641, 645 (Ind.Ct.App.2002).

▇▇▇ Reasonable suspicion is determined under the totality of the circumstances. *Lampkins*, 682 N.E.2d at 1271. If the facts known by the police at the time of the investigatory stop are such that a person of reasonable caution would believe that the action taken was appropriate, the command of the Fourth Amendment is satisfied. *Id.*[5]

---

4. The State does not acknowledge in its statement of facts or in the argument section of its brief that the police cars had "blocked in" the Stickle vehicle. In its reply brief, the State does acknowledge for the first time that "the officers apparently parked their car behind Defendant's" (Reply Br. at 3) but argues that circumstance should not be considered because Stickle was not in his car when police approached him. Therefore, the State asserts, Stickle's freedom of movement was not infringed because he could have "declined to speak with officers and … returned to the restaurant to receive his food." *Id.*

5. We have interpreted the protections provided by Article I, Section 11 of the Indiana Constitution regarding investigatory stops to be consistent with federal interpretation of protections provided by the Fourth Amendment. *Washington v. State*, 740 N.E.2d 1241, 1246 (Ind.Ct.App.2000), *trans. denied* 753 N.E.2d 7 (Ind.2001).

▮▮ An anonymous tip is not sufficient to permit police to detain a citizen and subject him or her to an investigatory stop absent independent indicia of reliability or officer-observed confirmation of the anonymous informant's prediction of the suspect's future behavior. *Washington v. State,* 740 N.E.2d 1241, 1246 (Ind.Ct.App. 2000), *trans. denied* 753 N.E.2d 7 (Ind. 2001). Federal precedent requires confirmation of the anonymous informant's ability to predict the suspect's future behavior in order to establish the credibility of the anonymous informant's claim concerning the suspect's alleged future illegal conduct. This requirement affords protection against information that might be relayed to the police by a prankster or by a police officer acting in bad faith. *Id.* (citing *Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).[6]

▮▮ Because only a small number of people are generally privy to an individual's itinerary, it is reasonable to believe that people with access to such information are likely to also have access to reliable information about the individual's illegal activities. *Lampkins,* 682 N.E.2d at 1271. When significant aspects of the anonymous informant's prediction are verified, there is reason to believe not only that the anonymous informant was honest, but also that the anonymous informant's information is sufficiently credible to justify an investigatory stop. *Id.* (citing *White,* 496 U.S. at 329–30, 110 S.Ct. 2412).

We recently addressed a similar situation in *Glass,* where we determined a defendant's motion to suppress was properly granted because a telephone call from an unnamed person did not contain sufficient indicia of reliability and because the police officer did not independently confirm the reliability of the caller or the salient information the caller provided. 769 N.E.2d at 640. There, an individual called the police to report reckless driving. The caller in *Glass* was not entirely "anonymous"—dispatch knew the identity of the caller and gave the officer a description of the vehicle that was being driven recklessly.

The officer found Glass driving the described vehicle. He followed Glass for about one block but witnessed no traffic violations or inappropriate driving. Nevertheless, the officer activated his emergency lights and stopped Glass. Based on the evidence found after the stop the State charged Glass with possession of marijuana, reckless possession of paraphernalia, and operating a vehicle with a controlled substance or metabolite in his body. The trial court granted Glass' motion to suppress all the evidence and we affirmed.

We noted in *Glass* that "Generally, information gleaned from a telephone caller differs from that obtained in a face-to-face encounter. In the latter situation, a trained officer has the opportunity to assess credibility and motive by observing facial expressions and subtle body language." 769 N.E.2d at 643. At the time of the *Glass* stop, as in the case before us, the police officer "did not know whether the caller was a concerned citizen, a prank-

---

**6.** The trial court noted the potential dangers of permitting an investigatory stop based on an anonymous tip of this nature:

> [A]ny disgruntled individual with knowledge of another's itinerary could cause the police to investigate and infringe upon the liberty and privacy interests of others. It does not take much imagination to envision a situation where a disgruntled party in a domestic proceeding, for example, with knowledge of the other's plan to pick up the parties' children for purposes of visitation at a certain location, at a certain time, in a specific car complete with license plate number, calls the police anonymously and fabricates the existence of a drug transaction for the mere purpose of harassment.
> (App. at 35.)

ster, or an imposter." *Id.* We could not discern from the record in *Glass*, nor can we here, whether the caller identified himself in such a way as to place his credibility at risk or as to subject himself to criminal penalties.

In *Glass*, we distinguished *State v. Eichholtz*, 752 N.E.2d 163 (Ind.Ct.App.2001), where the caller identified himself and therefore could have been held responsible for filing a false police report. The police officer visually confirmed that the caller was following Eichholtz and thus could reasonably have observed errant driving patterns. We noted there was no such confirmation in Glass' case: "The fact that a named caller with an untested reputation called the police does not in itself establish reasonable suspicion." *Glass*, 769 N.E.2d at 643.

The State in *Glass* "merely showed that the caller described a car sufficiently to permit [police] to identify a similar vehicle." *Id.* at 644. The officer followed the vehicle for about one block without observing any driving irregularities. The officer did not personally observe facts to verify the reliability of the caller or the reliability of any significant information provided by the caller. Finally, we noted "To the extent that the caller predicted future conduct, it did not occur." *Id.*

In *Glass*, the "future conduct" the caller predicted was reckless driving. We noted that the officer who stopped Glass' car observed no driving irregularities. In the case before us, the anonymous caller predicted a trip to McDonald's and an illegal drug transaction. The officers who stopped Stickle observed only that Stickle and Carter entered a restaurant and ordered food. The record does not reflect Stickle and Carter interacted with anyone other than restaurant employees and police. We note that while the record does not reflect the amount of marijuana police

found in the truck, Stickle was charged with "POSSESSION OF MARIJUANA UNDER 30 GRAMS" (App. at 19) and the police "supplemental case report" states "MOTIVE: PERSONAL GRATIFICATION." (*Id.*). This relatively small amount suggests the marijuana was for personal use and indicates Stickle and Carter had not gone to McDonald's to conduct the "illegal drug transaction" the anonymous caller predicted. *Cf. Berry v. State*, 574 N.E.2d 960, 963 (Ind.Ct.App.1991) (possession of a large quantity of narcotics, "much more than a typical user would possess on any given day," supported inference that Berry possessed the drugs with intent to deliver and not for personal use), *reh'g denied, trans. denied.*

"Reasonable suspicion requires more than conjecture," *Glass*, 769 N.E.2d at 644, and the record before us does not show the police had an objective and articulable suspicion that that Stickle had committed, was committing, or was about to commit an illegal act.

### Conclusion

The trooper-observed verification of the anonymous informant's prediction of Stickle's future activity was insufficient to give the troopers reasonable suspicion to perform an investigatory stop. We therefore cannot characterize as "contrary to law" or "clearly erroneous," *id.* at 640, the trial court's determination the evidence against Stickle should have been suppressed. Accordingly, we affirm.

KIRSCH, J., concurs.

MATHIAS, J., dissents with opinion.

MATHIAS, Judge, dissenting.

I certainly share the majority's concern that an anonymous prankster may be responsible for the dissemination of informa-

tion that police are permitted to rely upon while conducting investigatory stops. *See* Op. at 55 n. 6. However, I believe the majority's position is contrary to controlling precedent and this case is an instance where we must accede to that precedent, leaving correction of the current state of the law to our justices on the supreme court. Accordingly, I respectfully dissent.

## I. Information Acquired *after* Stickle's Investigatory Stop

The majority correctly recites the current rule in Indiana that "[i]f the facts known by the police *at the time of the investigatory stop* are such that a person of reasonable caution would believe that the action taken was appropriate, the command of the Fourth Amendment is satisfied." Op. at 54 (emphasis added) (citing *Lampkins v. State,* 682 N.E.2d 1268, 1271 (Ind.1997)). However, the majority's basis for suppressing the evidence obtained as a result of Stickle's search is premised upon information acquired *after* Stickle's investigatory stop. Op. at 55. In its decision, the majority states,

> In the case before us, the anonymous caller predicted a trip to McDonald's *and an illegal drug transaction* ... We note that while the record does not reflect the amount of marijuana police found in the truck, Stickle was charged with "POSSESSION OF MARIJUANA UNDER 30 GRAMS" (App. at 19) and the police "supplemental case report" states "MOTIVE: PERSONAL GRATIFICATION." (Id.). This relatively small amount suggests the marijuana was for personal use and *indicates Stickle and Carter had not gone to McDonald's to conduct the "illegal drug*

*transaction" the anonymous caller predicted.*

Op. at 56 (emphasis added). I respectfully believe that there are two problems with this reasoning.

The fact that Stickle had a small amount of marijuana on him when searched corroborates the prediction of the anonymous caller rather than discredits it.[7] As the majority notes, the anonymous caller predicted a "drug transaction"—there is no specification as to whether Stickle was to be the "seller" or the "buyer" of the drugs. If Stickle was to be the buyer, it is entirely logical that he would have either no drugs or a small amount of drugs on him at the time of the investigatory stop. In light of the presence of the police at McDonald's, it is not difficult to imagine why the seller failed to consummate the predicted transaction before Stickle's investigatory stop. The presence of a small amount of drugs merely corroborates the informant's prediction by indicating that Stickle is an individual who likely would have an interest in purchasing drugs.

More importantly, however, I believe the majority's analysis is contrary to controlling precedent. As the majority—citing our supreme court's holding in *Lampkins*—states, "if the facts known by the police *at the time of the investigatory stop* are such that a person of reasonable caution would believe that the action taken was appropriate, the command of the Fourth Amendment is satisfied." 682 N.E.2d at 1271 (emphasis added); *see also Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Platt v. State,* 589 N.E.2d 222, 226 (Ind.1992); *Francis v. State,* 764 N.E.2d 641, 645 (Ind.Ct.App. 2002) (noting that the reasonableness of

---

7. I note that the anonymous informant only gave the police the authority to perform an investigatory stop of Stickle; it was Stickle's admission of having committed theft that allowed police to exceed the scope of their investigatory stop by searching Stickle and his vehicle.

the officer's suspicion *must* be measured by the officer's knowledge *before* the officer conducted the investigatory stop) (emphasis added).

The majority's reliance on information obtained by way of a search conducted *after* Stickle's investigatory stop—for the purpose of questioning the reasonableness of the police's reliance on the anonymous caller—clearly contradicts the above precedent.

## II. Investigatory Stops and Anonymous Tips

*Florida v. J.L.*, 529 U.S. 266, 268, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), specifically refers to *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), as good law and cites *White* as an example of an anonymous tip supported by a sufficient indicia of reliability to justify an investigatory stop. *J.L.*, 529 U.S. at 270, 120 S.Ct. 1375. *J.L.* stated,

> In *White*, the police received an anonymous tip asserting that a woman was carrying cocaine and predicting that she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named motel. Standing alone, the tip would not have justified a *Terry* stop. Only after police observation showed that the informant had accurately predicted the woman's movements, we explained, did it become reasonable to think the tipster had inside knowledge

about the suspect and therefore to credit his assertion about the cocaine.

*Id.* at 270–71, 120 S.Ct. 1375.

Our case is strikingly similar to *White*. Stickle's informant accurately predicted the time and place of Stickle's arrival, the vehicle Stickle arrived in, and the description of the passenger that accompanied Stickle. These corroborated predictions satisfy the Fourth Amendment.

Analysis under the Indiana Constitution leads to the same result. This court has held that we interpret the protections provided by Article I, Section 11 of the Indiana Constitution, concerning investigatory stops, to be consistent with the federal interpretation of protections provided by the Fourth Amendment. *See Washington v. State*, 740 N.E.2d 1241, 1246 (Ind.Ct. App.2000), *trans. denied* (citing *Taylor v. State*, 639 N.E.2d 1052, 1053 (Ind.Ct.App. 1994)).

More importantly, our supreme court in *Lampkins*, 682 N.E.2d at 1271, noted,

> Because a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about the individual's illegal activities. *When significant aspects of the caller's prediction were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.*[8]

*Id.* (quoting *White*, 496 U.S. at 332, 110 S.Ct. 2412) (emphasis added).[9]

8. Though *Lampkins* involved both a confidential informant and an anonymous informant, *Lampkins* does not require corroboration of a confidential informant to justify an investigatory stop based on officer-observed confirmation of activity predicted by an anonymous informant. Rather, *Lampkins'* language indicates that federal authority is what should guide our decision-making process. *Lampkins* not only quotes this federal authority

with approval but concludes by noting that its analysis "satisfied *Terry*." *Lampkins*, 682 N.E.2d at 1272. "*Terry*" obviously is referring to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which is a federal case.

9. The majority also suggests that *State v. Glass*, 769 N.E.2d 639, 640 (Ind.Ct.App. 2002), supports its position, because, as in

Although I agree with the majority's concern that the mere knowledge of an individual's itinerary would allow a disgruntled individual to direct an investigatory stop toward an unsuspecting law-abiding citizen and would like to see this issue revisited under the Indiana Constitution, I believe this concern may only be addressed by our supreme court. Consequently, I must respectfully dissent.

*Glass,* we are unable to determine whether Stickle's informant "identified himself in such a way as to place his credibility at risk or as to subject himself to criminal penalties." Op. at 56. However, in *Glass,* the anonymous caller's future-predicted activity was never verified by officer observation. *See* op. at 56. It is irrelevant whether the anonymous caller disclosed his or her identity in the case at bar. *Lampkins, J.L.,* and *White* state that if an anonymous caller's future-predicted activity is verified through officer observation, the officer may conduct an investigatory stop. By definition, an anonymous caller is an individual who has not identified him or herself.