

**FILED**

Jun 26 2018, 6:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen Gerald Gray
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marcus K. Baxter,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | June 26, 2018<br><br>Court of Appeals Case No.<br>49A04-1707-CR-1608<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Jose D. Salinas,<br>Judge<br><br>Trial Court Cause No.<br>49G14-1607-F6-27648 |

**Brown, Judge.**

[1] In this interlocutory appeal, Marcus K. Baxter appeals the trial court's order denying his motion to suppress evidence. Baxter raises two issues which we consolidate as whether the court erred in denying his motion to suppress. We affirm.[1]

## Facts and Procedural History

[2] On July 17, 2016, the car wash owner or manager of Mike's Carwash on East Washington Street called 911 and stated that two suspicious males[2] were on the property, they were not using the business's services, they looked to be evading the security cameras to the business, and that he wanted the police to "check them out." Transcript Volume 2 at 36. At about 12:54 p.m., Sergeant Frank Wooten of the Indianapolis Metropolitan Police Department ("IMPD") responded to the dispatch and arrived on the scene, followed next by two State troopers. When he arrived, Sergeant Wooten encountered two Hispanic males that had been on his right and one black male that walked from his left to his

---

[1] We heard oral argument at Jasper High School on May 16, 2018. We thank the school's administration, faculty, and students, and the Dubois County Bar Association, for their gracious hospitality. We also thank counsel for their informative and engaging oral advocacy and subsequent discussion with the students.

[2] When asked to describe how the incident began, IMPD Sergeant Frank Wooten testified that the "dispatch put out a run for suspicious persons." Transcript Volume 2 at 9. During cross-examination, Sergeant Wooten indicated that the caller told the dispatch that "two Hispanic males" and "a black male" were behind the property and it "looked like they had been avoiding the cameras." Id. at 16. IMPD Officer Thomas Figura testified that the "dispatch radio run was the manager of the business had called 911 and stated that there were two suspicious black males on the property." Id. at 36. During cross-examination, Officer Figura testified that he recalled indicating in his probable cause affidavit that there were "two suspicious black males" and there was nothing "from the dispatcher about Hispanic males," and stated "[t]hat would be inaccurate" when asked if he "heard Sergeant Wooten's testimony and he indicated he thought the dispatch had something in it about Hispanic males as well, but that's not true, is it?" Id. at 45.

right. Sergeant Wooten obtained information from each of the three individuals and ran the information for warrants.

[3]     When IMPD Officer Thomas Figura arrived on the scene, Sergeant Wooten and the two State troopers were speaking with the three individuals. When Sergeant Wooten released the three individuals because the warrant checks had come back negative, the two Hispanic males entered an "SUV that had been parked on the east end of the parking lot and they left" and "the black male had walked away." *Id.* at 11. Sergeant Wooten advised Officer Figura that the black male had come from the vicinity of a black Chevrolet with heavy tinting which had its engine on and was parked in the last spot in the northwest corner of the business. Officer Figura approached the parked Chevrolet from the rear and then from the driver's side, where he could see the side window was open to an extent. Before looking inside, Officer Figura could smell the odor of burnt marijuana coming from the inside of the car. When he ordered Baxter, the occupant he saw in the driver's seat, to exit the car, he received no response. Officer Figura commanded Baxter to open the door. When the door was opened, Officer Figura could see what appeared to be marijuana in plastic baggies and what appeared to be a number of white pills in the location where one would "stick [their] hand in to push the door open on the interior of the vehicle." *Id.* at 40.

[4]     On July 19, 2016, the State charged Baxter with possession of a narcotic drug as a level 6 felony and possession of marijuana as a class A misdemeanor. On January 25, 2017, Baxter filed a motion to suppress evidence which argued that

"the stop and or detention of the vehicle in which [he] was a passenger occurred without probable cause or reasonable suspicion" and violated the Fourth Amendment of the United States Constitution and the Indiana Constitution. Appellant's Appendix Volume 2 at 17.

[5]     At the suppression hearing, Sergeant Wooten testified the dispatch "put out a run for suspicious persons," he saw three individuals on the car wash's "west end on the north side of the exit" when he arrived, and he pulled into the "west end of the car wash" on the exit side "just past the exit." Transcript Volume 2 at 9-10, 17. He indicated that his vehicle did not block the exit of the car wash, would have been parallel to the vending machines on the building wall shown in a photographic exhibit, and would be "up in front of the exit right there angled in from right to left." *Id.* at 27. He stated, "[w]hen I first started talking to the Hispanic males, the black male started walking towards us" from the direction of Baxter's car and "I didn't have to call him to me." *Id.* at 24. He testified he obtained the information of the three individuals, the warrant checks "came back negative," and he "then . . . released them at the scene." *Id.* at 11. When asked what he did after releasing the three individuals, he stated:

> I advised Officer Figura where the black male had walked from, the vehicle that was backed in. Officer Figura walked over to that vehicle. And I walked over to the front of that vehicle, probably within three to four feet of the front of that vehicle, and could immediately smell what I believe through my training and experience to be the odor of marijuana coming from that vicinity.

*Id.* at 11-12. He stated that the vehicle was "backed into the last spot next to the fence" and he could not see inside the vehicle but was able to detect the odor of marijuana because the "window was down a little bit," or approximately "six inches," and "[t]here was a crack." *Id.* at 12. He testified that the vehicle was "so dark and so tinted" and "we couldn't tell how many were actually in the vehicle at the time." *Id.* at 13.

[6] During cross-examination, Sergeant Wooten testified that, when he arrived, he was "looking for suspicious people behind the building not knowing how many were there," that the three individuals were not interacting or taking part in illegal activity that he could observe, and that he saw them "on the west end of the north side of the exit" of the car wash. *Id.* at 17. When Sergeant Wooten was shown a number of photographic exhibits depicting the scene at the car wash, he indicated the "Hispanic males were behind the building" and the "black male was coming from the left side . . . which is where the black vehicle was parked backed in" and marked the locations where he "encountered the two Hispanics" and where he "encountered the one black male," the location of Baxter's car, and the location of his vehicle. *Id.* at 18, 21.

[7] Officer Figura testified that, from the time of his arrival, the encounter with the first three individuals lasted five minutes and answered, "[t]hat is correct," when asked "[y]ou didn't know [Baxter] was even on the scene when you pulled your car up." *Id.* at 52. When asked "[a]fter releasing [the three individuals], what did you do next," he answered that Sergeant Wooten had indicated one of the individuals who was released "had come from" a "vehicle

which was parked in the last spot in the northwest corner" and that he could "hear that the vehicle was running," the "engine was running," and it "was in operation." *Id.* at 37. He indicated that he approached Baxter's car from the rear, that he could not see if there was anybody in the vehicle at that time because the vehicle window tinting was heavy, and that he did not see anything in the vehicle. He testified he could see that the driver's side window was slightly cracked open when he approached, he could "smell the odor of marijuana coming from inside of the vehicle outside towards me" before he looked inside, and his face was "pretty much pressed up against the window" when he smelled the marijuana. *Id.* at 37, 40. He also indicated that, when he received no response from the occupant that he saw in the driver's seat, he forcibly commanded the individual to exit the vehicle, was "concerned for officer safety," and his gun was taken out of its holster and placed at the side of his right leg. *Id.* at 39. He stated that, as the door came open and Baxter began to exit the vehicle, he could see in "plain view . . . what appeared to be marijuana in plastic baggies and what appeared to be a number of white pills." *Id.* at 40. After being asked about how close approximately he was to the door handle, Officer Figura stated, "[w]ell, I gave some distance because I didn't know what [Baxter's] intentions were when he exited the vehicle for safety reasons. But I would say between seven to eight feet from that door." *Id.*

[8]     Officer Figura identified State's Exhibits 1, 2, and 3 as photographs taken the day of the incident depicting Baxter's parked car and the driver's interior door handle. During cross-examination, he answered affirmatively when asked if he

remembered indicating in his probable cause affidavit that the 911 dispatcher had specified that there "were two suspicious black males . . . walking on the property and talking on their cell phones." *Id.* at 45. He stated that he could not testify as to how many police cars were there and was only certain that his and Sergeant Wooten's patrol cars were present. He testified that, prior to walking over to the car, he "didn't know [Baxter] was there," and that the distance between the front of his vehicle and the rear of Baxter's car was approximately ten feet and agreed that, when he said approximate, "it's plus or minus." *Id.* at 49, 51. He answered affirmatively when asked about whether he testified previously in his deposition that he parked his car "somewhat behind" Baxter's car, whether he said that he "pulled up behind" Baxter's car, and whether he recalled his testimony that he believed he was "about ten feet from" Baxter's car. *Id.* at 47-48. Officer Figura was shown Defendant's Exhibit D, a photographic depiction of the car wash and the spot where Baxter's car had been parked, and drew an oval to indicate the location of his police vehicle.

[9] Baxter testified that he was familiar with Defendant's Exhibit D, answered affirmatively when asked if he saw where Officer Figura depicted the general location of where he was parked next to the red fence, and stated "I'd say that I can't really recall. I just know that he [sic] was shorter than the car length. Like if – I couldn't back up if I wanted to." *Id.* at 55. After being asked if he would have been able to "cut [his] wheel" and have the "truck [sic] of [the] car moved to the left" or would have had to "come straight back before [he] could move," he testified that he would have had to "come straight back" to "get out

of this position." *Id.* at 56. He testified that he would not have been able to come straight back when asked about his "ability to do that based on where Officer Figura had parked his car." *Id.* Baxter also testified Sergeant Wooten's vehicle protruded beyond the north edge of the building, that he believed that the "protrusion of his building (verbatim) was obstructing anybody who wanted to drive back behind the car wash at the time," and that state trooper vehicles were "on the other side," or north side, of the building and would have blocked anybody that wanted to exit that direction. *Id.* at 57-58. He testified he had a driver's license since he was eighteen, was familiar with parallel parking, was aware of how to "cut [his] wheel to get out from a parallel parking situation," and stated "[y]es, I could," when asked if "there's approximately ten feet between you and another car, you could maneuver in a parallel parking situation." *Id.* at 61. The following exchange occurred between the prosecutor and Baxter:

> [Baxter:] But I couldn't – he was right up on me. I couldn't –
>
> [Prosecutor:] I understand that.
>
> [Baxter's Counsel:] Wait. Let him answer the question. I didn't hear the answer. Answer the question, please.
>
> [Baxter:] He said – he asked me was there somebody behind me, was I – basically, he's asking me could I just have backed out and exited. I said, No, because there was an officer right here behind me. I couldn't back out.
>
> [Prosecutor:] I understand that there was an officer's vehicle here behind you.
>
> [Baxter:] Uh–huh.

> [Prosecutor:] But in this open area, there's an entrance or an exit and there were no law enforcement officers [sic] vehicle blocking that entrance or exit?
>
> [Baxter:] No, not that entrance.

*Id.* at 61-62. At the end of the hearing, the court asked the prosecutor to characterize the police "tools," or "[i]n other words, their cars," and the prosecutor answered:

> Well, the vehicles are – there's three vehicles on the north corner of the lot that have little to do with [Baxter's] car. There is . . . Officer Figura's car which is ten feet back behind [Baxter's] car but at the time that he parks the car and for the next few minutes, he has no idea that that car is an issue or that there's anyone inside or that [Baxter] has any reason to be a person of suspicion. So you can't accidentally detain someone that you're not aware of.
>
> So the vehicle's placement, certainly Officer Figura's car, does not raise to the level of detention of Mr. Baxter at that time.

*Id.* at 67. Later, the court and Baxter's counsel also discussed the placement of the police vehicles, and the following exchange occurred:

> [The Court:] . . . we're not talking about a Walmart parking lot here. Okay. We're talking about a parking lot that is equipped to handle as many vehicles as they have business to do at any given time. All right.
>
> And I don't want to interject information that isn't into evidence, but I've been to a Crew – a Mike's Carwash. I know how big they are. Okay. They're not big in nature. They have enough parking spaces for only – you know, whatever vehicles that are being serviced at that time.

So if you think the police did the wrong – approached it the wrong way, approached that scene the way wrong, where should they have parked their vehicles when in responding to the dispatch?

[Baxter's Counsel:]  I don't have a problem with where the state troopers [sic] cars were parked or where Sergeant Wooten parked his car.

* * * * *

[The Court:]  If the police didn't park the right way, then what should they have done with their vehicles?

[Baxter's Counsel:]  Well, I do not believe that Officer Figura should have pulled up as close as he did to Mr. Baxter's car –

[The Court:]  That's the objection?

[Baxter's Counsel:] – because there's plenty of space there that he could have parked way back.

[The Court:]  So that's the objection?

[Baxter's Counsel:]  That's the objection.

*Id.* at 73-74.  In its order of final judgment on motion to suppress and certification for interlocutory appeal, the court denied Baxter's motion, finding that "whether the police 'seized' [Baxter] within the meaning of the 4th Amendment and whether there was a reasonable suspicion of criminal activity are appropriate issues to be raised on appeal."  Appellant's Appendix Volume 2 at 10.

*Discussion*

[10] The issue is whether the trial court erred in denying Baxter's motion to suppress. The admission of evidence is entrusted to the trial court's sound discretion. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). "We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant." *Id.* "We defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence." *Id.* "When the trial court's denial of a defendant's motion to suppress concerns the constitutionality of a search or seizure, however, it presents a question of law, and we address that question de novo." *Id.*

[11] Baxter argues that a reasonable person in his position, with his vehicle blocked in and his passenger[3] detained for warrant checks, would not feel free to leave and that the police detained him and his passenger in violation of his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

A. *Fourth Amendment*

[12] The Fourth Amendment provides:

---

[3] Baxter does not point to the record and the record does not support that he had a passenger. The record reflects that the black male, who had walked from the "vicinity of [Baxter's car]", "had walked away" when the warrant checks "came back negative." Transcript Volume 2 at 11, 32.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. *Powell v. State*, 912 N.E.2d 853, 859 (Ind. Ct. App. 2009) (citing *State v. Calmes*, 894 N.E.2d 199, 202 (Ind. Ct. App. 2008) (citing *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), *reh'g denied*, *trans. denied*)). First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. *Id.* Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. *Id.* The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. *Id.* This is a consensual encounter in which the Fourth Amendment is not implicated. *Id.* "The Fourth Amendment is not triggered unless an encounter between a law enforcement officer and a citizen 'loses its consensual nature.'" *Clarke v. State*, 868 N.E.2d 1114, 1118 (Ind. 2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382 (1991)).

[14] In other words, "[n]ot every encounter between a police officer and a citizen amounts to a seizure requiring objective justification." *Powell*, 912 N.E.2d at 859 (citing *Overstreet*, 724 N.E.2d at 663). A person is "seized" only when, by means of physical force or a show of authority, his or her freedom of movement is restrained. *Id.* (citing *State v. Lefevers*, 844 N.E.2d 508, 513 (Ind. Ct. App. 2006) (citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 1877 (1980), *reh'g denied*), *trans. denied*). The test for whether there has been a seizure is two prong: (1) there must be a show of authority, and (2) a submission to that authority or a touching by the seizing officer or a submission by the individual the officer intends to seize. *California v. Hodari D.*, 499 U.S. 621, 628-629 (1991). "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Id.* at 628. Factors that might lead a reasonable person to conclude that he or she was not free to leave include: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of the citizen; (4) the use of language or tone of voice that implies compulsion; and (5) accusation of criminal activity. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013) (quoting *Overstreet*, 724 N.E.2d at 664 (citing *Mendenhall*, 446 U.S. at 554)). What constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary depending upon the particular police conduct at issue and the setting in which the conduct occurs. *Powell v. State*, 912 N.E.2d at 860 (citing *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S. Ct. 1975, 1979 (1988)).

In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. *Id.* (citing *Mendenhall*, 466 U.S. at 555, 100 S. Ct. at 1877). It is not the purpose of the Fourth Amendment to eliminate all contact between police and the citizenry. *Mendenhall*, 446 U.S. at 553, 100 S. Ct. at 1877.

[15]     Baxter argues that he was detained in the absence of any criminal activity afoot. He likens his case to *State v. Stickle*, 792 N.E.2d 51 (Ind. Ct. App. 2003), *trans. denied*, and contends that a reasonable suspicion of criminal activity was "completely absent" and the "only thing observed was one black male walking and two Hispanic males off by themselves." Appellant's Brief at 12. He asserts that his unequivocal testimony that he could not back his vehicle out from the parking space was unrebutted by the police officers. He contends that the "totality of the circumstances" consists of "much more than Baxter's vehicle blocked from leaving by Figura's police vehicle," including the "presence of 4 police officers, the fact that the two State Trooper vehicles blocked any egress by way of the driveway behind the car wash," and, finally, the illegal detention of three individuals while warrant checks were performed. *Id.* at 10-11.

[16]     The State responds by arguing that the officers did not stop, detain, or seize Baxter until after specific and articulable facts led them to reach the reasonable suspicion that a crime was occurring, contending that "he was not detained when he claims to have been detained" and that reasonable suspicion existed when "[n]ot one but two different police officers, within a few feet of a running

car with a window cracked open, could smell what each perceived as the smell of burnt marijuana." Appellee's Brief at 13, 17. The State contends that the action of approaching a running car with tinted windows and a window cracked open that was parked along a fence-line by Officer Figura and Sergeant Wooten was not a stop until Sergeant Wooten was within three or four feet of the Chevrolet and he could smell what he believed was the overpowering odor of marijuana. The State also asserts that, at that time, the officers had no idea if anyone was even in the vehicle and had only the belief that it had been abandoned by one of the three individuals that had been reported, and that they encountered, at the business.

[17] The record reveals that law enforcement officers responded to a suspicious persons dispatch and, when he arrived at the scene, Sergeant Wooten first started talking to two Hispanic males and a third black male walked toward him from the direction of Baxter's parked and running car. When Sergeant Wooten obtained information from and ran warrant checks on the three individuals, none of the law enforcement officers present had encountered Baxter. After the checks came back negative, the two Hispanic males entered an "SUV that had been parked on the east end of the parking lot and left" and "[t]he black male had walked away." Transcript Volume 2 at 11. Because Sergeant Wooten had advised him that the black male had originally walked from the vicinity of the parked car, Officer Figura approached the parked car.

[18] At the moment when he could smell burnt marijuana, Officer Figura had a particularized and objective basis for suspecting legal wrongdoing. *See Clark*,

994 N.E.2d at 260. To the extent that Baxter argues that he was not free to leave before that point, we conclude that the action of Officer Figura's "pull[ing] up behind" behind Baxter to assist Sergeant Wooten in the dispatch call did not constitute a seizure under the Fourth Amendment in this instance. Transcript Volume 2 at 47. *See Powell* 912 N.E.2d at 859 ("Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification.") (citing *Overstreet*, 724 N.E.2d at 663). Even had Baxter been unable to initially maneuver around Officer Figura's vehicle, based on the record and under these circumstances, we cannot say that he was the subject of an investigatory detention until after officers had a particularized and objective basis for suspecting legal wrongdoing.[4] The encounter with the three individuals lasted five minutes and occurred on the north side of the building just to the east of the exit, several parking spots east from where Baxter was parked. During this encounter, there was no display of a weapon, physical touching, the use of language or tone of voice that implied compulsion, or an accusation of criminal activity toward Baxter, and the attention of the officers was focused on the three individuals, and not on Baxter. We conclude a reasonable person in Baxter's position would have felt free to leave the scene. A reasonable person would have felt he could have approached Officer Figura

---

[4] To the extent Baxter cites *State v. Stickle*, we note that *Stickle* is distinguishable from this case because, in *Stickle*, a state trooper approached and addressed the defendant and his passenger, stating, "Ma'am, sir, we need you to come with us," the defendant complied and walked outside with two state troopers, and the defendant observed that his vehicle was "'completely blocked in' by two police cars such that it would not have been possible for [the defendant and his companion] to leave in the vehicle." 792 N.E.2d at 54 (internal citations omitted).

and asked him to move his vehicle if he believed he could not back out of the space.

B. *Article 1, Section 11*

[19] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[20] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson*, 5 N.E.3d at 368. "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). "The focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct." *Hardister v. State*, 849 N.E.2d 563, 573 (Ind. 2006). "We consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Robinson*, 5 N.E.3d at 368 (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[21] Baxter contends that the degree of concern was almost non-existent given that the original 911 caller did not describe criminal activity and the police did not observe any and that the extent of law enforcement needs was minimal in light of the alleged suspicious activity. Baxter also contends that the degree of intrusion was significant because he was blocked in while police conducted the illegal detention to check for warrants, and asserts, again without citation to the record, that one of the three detained individuals was a passenger from his car.

[22] The record reveals that the car wash owner or manager of Mike's Carwash called 911 and stated that suspicious males were on the property, that they were not using the business's services, and that they looked to be evading the security cameras to the business. When Officer Figura parked behind Baxter's car, Sergeant Wooten had already arrived at the scene, encountered three males on the "west end on the north side of the exit" of the car wash building, and the black male had walked over toward the officers from the vicinity of a running, parked car with heavily tinted windows. Transcript Volume 2 at 17. When the warrant checks of the three individuals came back negative, the two Hispanic males entered a SUV and left and the black male walked away. Officer Figura approached Baxter's car from the rear and, before looking inside, he could smell the odor of burnt marijuana coming from the inside of the car. He received no response when he ordered Baxter, the occupant he saw in the driver's seat, to exit the car. We conclude that the record indicates a degree of concern, suspicion, or knowledge that a violation had occurred.

[23] The record also reveals that the degree of intrusion was minor and the extent of law enforcement needs for their own protection was strong. As Officer Figura approached Baxter's running and parked car from the rear, he could not discern how many other occupants were inside because of the heavily tinted windows. Reaching the driver's window which was open to a degree, he forcibly commanded Baxter to exit after he had already smelled burnt marijuana, received no response, and became concerned for his safety. Under these circumstances, we conclude that Baxter's rights against unreasonable search and seizure under Article 1, Section 11 of the Indiana Constitution were not violated and the trial court did not err in denying Baxter's motion to suppress.

## *Conclusion*

[24] For the foregoing reasons, we affirm the denial of Baxter's motion to suppress.

[25] Affirmed.

Najam, J., and May, J., concur.